UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

        -v.-

MARK McKELVIE,

               Defendant.

:
:
:
:
:
:

**INFORMATION**

08 Cr.



- - - - - - - - - - - - - - - -x

## COUNT ONE

(Conspiracy to Commit Securities Fraud,
Wire Fraud, and Commercial Bribery)

The United States Attorney charges:

### Relevant Entities and Individuals

1.  At all times relevant to this Information, AR Associates, Inc. ("AR Associates") was a Nevada corporation purportedly engaged in the business of developing and selling technology for use in easing traffic congestion.  AR Associates' common stock was publicly-traded over-the-counter, and listed under the symbol "ARAI," in the "pink sheets," an inter-dealer quotation service that provides quotations, prices, and other financial information in electronic form for certain over-the-counter securities.

2.  At all times relevant to this Information, GreenWave, Inc. ("GreenWave"), was the wholly-owned, primary operating subsidiary of AR Associates.

3.    At all times relevant to this Information, Bradford Baines Securities, L.L.C. ("Bradford Baines"), was a fictitious brokerage firm, created by the NASD at the request of the Federal Bureau of Investigation ("FBI").  Bradford Baines used 40 Exchange Place, New York, New York as its purported address of operations.

4.    At all times relevant to this Information, MARK McKELVIE, the defendant, was employed as a stock promoter and financier in Rochester, New York.

5.    At all times relevant to this Information, a cooperating witness ("CW-1"), purported to be a stock promoter who had the ability to organize retail sales by securities brokers in the New York City area.

## The Scheme To Defraud

6.    As explained more fully below, from in or about January 2003 through in or about March 2003, MARK McKELVIE, the defendant, together with others known and unknown, engaged in a scheme to manipulate artificially the price of AR Associates' common stock.  In furtherance of this scheme, McKELVIE and others, caused: (a) manipulative market activity in AR Associates' common stock that was designed to appear to be the product of free and fair market forces; (b) the dissemination of materially false and misleading public statements concerning AR Associates' business prospects; and (c) offers to pay excessive, undisclosed compensation to stock brokers to sell AR Associates'

2

common stock to their public customers.

7.    In furtherance of the fraudulent scheme, a co-conspirator not named as a defendant herein ("CC-1") obtained control over a substantial quantity of the issued and outstanding shares of AR Associates' common stock.  As of in or about January 2003, CC-1 controlled a substantial quantity of the outstanding shares of AR Associates' common stock.

8.    In or about February 2003, CC-1 and another co-conspirator not named as a defendant herein ("CC-2") established a purported account at Bradford Baines in the name of Western Star Energy (the "Western Star Energy Account").

9.    To promote the fraudulent scheme, from in or about January 2003 through in or about March 2003, MARK McKELVIE, the defendant, agreed with CC-1, CC-2 and others, to generate artificial demand among retail customers for AR Associates' common stock by paying secret bribes to stock brokers to motivate them to cause their customers to buy AR Associates' common stock. Toward this end, CC-1, CC-2 and McKELVIE agreed that CW-1 would recruit stock brokers who would recommend that their customers, to whom they owed a fiduciary duty, purchase AR Associates' common stock.  When the brokers' customers were persuaded to place orders to buy AR Associates' stock, those orders would be "filled" with sales of shares from accounts controlled by CC-1 and CC-2.  In return, CC-1 and CC-2 agreed to pay McKELVIE and CW-1 approximately 55 percent of the proceeds of such sales, with

the understanding that CW-1 would then use 30 percent of those sales proceeds to compensate brokers to encourage them to tout aggressively AR Associates' stock to the public. CC-1 and CC-2 further agreed with McKELVIE and CW-1 that neither McKELVIE, CW-1, nor the brokers CW-1 recruited would disclose these excessive commissions to the public. Instead, the brokers would falsely inform their customers, to whom the brokers owed a fiduciary duty, that a nominal commission of approximately 2 percent of the sale proceeds would be charged.

10. On or about February 14, 2003, CC-1 and CC-2 caused approximately 500,000 shares of AR Associates' stock to be transferred into the Western Star Energy Account for use in the manipulation scheme.

11. In or about February 2003, after transferring this block of AR Associates' stock to the Western Star Energy Account, CC-1 and CC-2 enlisted the assistance in the scheme of securities broker-dealers who made markets in AR Associates' stock. As market makers for AR Associates' stock, these securities broker-dealers posted publicly "bid" and "ask" prices for AR Associates' stock.

12. CC-1, CC-2 and others, acting as market makers, offered shares for sale in the open market at "ask" prices far exceeding the "ask" prices dictated by natural market forces. MARK McKELVIE, the defendant, and others then purchased shares from "friendly" market makers who offered shares at lower prices

4

to prevent those market makers from interfering with the
manipulation scheme. This had the effect of ensuring that the
artificially inflated price was the lowest price available to the
investing public. This further created the false appearance of
demand for AR Associates' stock, and the appearance of a stock
that was increasing in value. As a result of these manipulative
means, from on or about February 20, 2003 through on or about
February 21, 2003, AR Associates' share price increased to $0.45
per share from $.06 per share, and thereby fraudulently gave the
appearance of <u>bona fide</u> trading and demand for AR Associates'
stock.

13.  On or about February 21, 2003, and following the
issuance of a false press release regarding AR Associates and the
manipulative trading activity that artificially inflated the
share price, CW-1 caused purported retail purchases of
approximately 45,000 shares of AR Associates' stock held in the
Western Star Energy Account at the price of $0.45 per share.
Those trades were settled using undercover FBI funds.

14.  On or about February 21, 2003, the proceeds from
the sales of AR Associates' stock, which totaled approximately
$20,000, less the 2 percent commission that the co-conspirators
agreed would be disclosed to the customers, were wired from the
Western Star Energy Account into an account maintained at the
Royal Bank of Canada in Vancouver.

15.  On or about February 26, 2003, CC-1 and CC-2

5

wired MARK McKELVIE, the defendant, approximately $11,000, representing 55 percent of the sales proceeds of the AR Associates' stock.

16.    In accordance with the agreement reached among MARK McKELVIE, the defendant, CC-1, CC-2 and CW-1, on or about February 27, and 28, 2003, McKELVIE caused approximately $8,400 to be deposited into an undercover account maintained by the FBI at a bank in Manhattan that CW-1 represented he controlled.

## STATUTORY ALLEGATIONS

### The Conspiracy

17.    From in or about January 2003 through in or about March 2003, in the Southern District of New York and elsewhere, MARK McKELVIE, the defendant, together with CC-1, CC-2 and others known and unknown, unlawfully, wilfully, and knowingly, did combine, conspire, confederate, and agree together and with each other to commit offenses against the Unites States, to wit, to commit: (a) fraud in connection with the purchase and sale of securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; (b) wire fraud, in violation of Title 18, United States Code, Section 1343; and (c) commercial bribery, in violation of the laws of the State of New York, by using the facilities of interstate commerce, in violation of Section 1952(a)(3) of Title 18, United States Code.

6

## Objects of the Conspiracy

### Securities Fraud

18.  It was a part and an object of the conspiracy that
MARK McKELVIE, the defendant, together with others known and
unknown, unlawfully, wilfully, and knowingly, by the use of the
means and instrumentalities of interstate commerce, the mails,
and the facilities of national securities exchanges, directly and
indirectly, would and did use and employ, in connection with
purchases and sales of securities, manipulative and deceptive
devices and contrivances, in violation of Title 17, Code of
Federal Regulations, Section 240.10b-5, by:  (a) employing
devices, schemes, and artifices to defraud; (b) making untrue
statements of material fact and omitting to state material facts
necessary in order to make the statements made, in light of the
circumstances under which they were made, not misleading; and (c)
engaging in acts, practices, and courses of business which
operated and would operate as a fraud and deceit upon other
persons, in connection with the purchase and sale of AR
Associates' common stock, all in violation of Title 15, United
States Code, Sections 78j(b) and 78ff.

### Wire Fraud

19.  It was further a part and an object of the
conspiracy that MARK McKELVIE, the defendant, together with
others known and unknown, unlawfully, wilfully, and knowingly,
having devised and intending to devise a scheme and artifice to

7

defraud, and for obtaining money and property by means of false
and fraudulent pretenses, representations, and promises, would
and did transmit and cause to be transmitted by means of wire
communication in interstate and foreign commerce, writings,
signs, signals, pictures, and sounds for the purpose of executing
such scheme and artifice, in violation of Title 18, United States
Code, Section 1343.

### Travel Act: Commercial Bribery

20.   It was further a part and object of the conspiracy
that MARK McKELVIE, the defendant, together with others known and
unknown, unlawfully, willfully, and knowingly, would and did
travel in interstate commerce and use the mails and facilities in
interstate and foreign commerce, with intent to promote, manage,
establish, carry on, and facilitate the promotion, management,
establishment, and carrying on of unlawful activity,
specifically, commercial bribery, in violation of New York State
Penal Law Sections 180.00 and 180.03; and thereafter would and
did perform and attempt to perform an act to promote, manage,
establish, carry on, and facilitate the promotion, management,
establishment, and carrying on of such unlawful activity, all in
violation of Title 18, United States Code, Section 1952(a)(3).

### Overt Acts

21.   In furtherance of the conspiracy and to effect its
unlawful objects, MARK McKELVIE, the defendant, together with
others known and unknown, committed the following overt acts,

8

among others, in the Southern District of New York and elsewhere:

a.  On or about February 12, 2003, CC-1 spoke by telephone with an FBI agent in New York, New York acting in an undercover capacity as a stockbroker employed by Bradford Baines concerning the establishment of an account under the name of Western Star Energy.

b.  On or about February 27 and 28, 2003, McKELVIE wired approximately $8,400, representing a portion of the sale proceeds of the AR Associates' stock, into an account maintained by the FBI at HSBC Bank in Manhattan.

(Title 18, United States Code, Section 371.)

### COUNT TWO

(Securities Fraud)

The United States Attorney further charges:

22.  The allegations set forth in paragraphs 1 through 16 and paragraph 21 of this Information are repeated and realleged as if set forth fully herein.

23.  From in or about January 2003 through in or about March 2003, in the Southern District of New York and elsewhere, MARK McKELVIE, the defendant, together with others known and unknown, unlawfully, wilfully, and knowingly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal

9

Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons in connection with purchases and sales of AR Associates' common stock.

    (Title 15, United States Code, Sections 78j(b) and 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
    Title 18, United States Code, Section 2.)

MICHAEL J. GARCIA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v -

### MARK McKELVIE,

**Defendant.**

## INFORMATION

08 Cr.

(Title 18, United States Code, §§ 2, 371; Title 15, United
States Code, §§ 78j(b) and 78ff; 17 C.F.R. §§ 240.10b-5.)

MICHAEL J. GARCIA
United States Attorney.